UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PETER DELGADO,

|  |  |  |
|---|---|---|
|  | Plaintiff, | **FIRST AMENDED COMPLAINT** |
|  | -against- | **JURY TRIAL DEMANDED** |

CITY OF NEW YORK, individually and in their official
capacities as New York City police officers, MD
SAMSUDDIN, WILFRED MARTINEZ, KYLE TING,
LUIS RODRIGUEZ and JOHN or JANE DOE 1-10,

ECF CASE
Docket No. 19-cv-6320 (PAE)

Defendants.
-------------------------------------------------------------------X

Plaintiff, PETER DELGADO, by his attorneys, Sim & DePaola, LLP, for his complaint

against the above Defendants, City of New York, individually and in their capacities as New

York City police officers, Md Samsuddin, Wilfred Martinez, Kyle Ting, Luis Rodriguez and

John or Jane Doe 1-10, alleges and states as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action, in which Plaintiff seeks relief, vis-à-vis 42 U.S.C. §§ 1981,

1983, 1985, 1986 and 1988, for the violations of his civil rights, which are protected and

guaranteed by virtue of the Constitution of the United States, as well as the constitution and laws

of the State of New York.

2.      Plaintiff's claims arise from events that occurred on three distinct dates, April 23, 2018,

May 4, 2018 and September 22, 2018. On each disparate occasion, Defendants, acting under

color of state law, arrested, detained, assaulted, battered and initiated criminal prosecutions

against Mr. Delgado. As a result, Mr. Delgado was deprived of his liberty and suffered serious

physical, emotional and psychological injuries.

3.      Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorney's fees, together with such other and further relief as this Court may deem just and proper.

## JURISDICTION

4.      This action arises under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, as well as the Constitution and Laws of the State of New York.

5.      The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

6.      Venue is laid within the Southern District of New York, in that Defendant, City of New York, is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

7.      Plaintiff, Peter Delgado ("Mr. Delgado"), is a male Hispanic or African-American, who resides in the County of Bronx, within the City and State of New York

8.      Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

9.      At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision,  implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision,

discipline and retention and conduct of all NYPD personnel, including police officers, detectives and supervisory officers as well as the individually named Defendants herein.

10.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

11.     Defendant, Md Samsuddin ("Samsuddin"), was, at all times here relevant, a police officer and/or detective employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Samsuddin was, at all times relevant herein, a police officer, under Shield No. 15872 and Tax Reg. No. 952204, assigned to Transit District 1, located at 59th Street/Columbus Circle Subway Station, New York, New York 10019. Defendant Samsuddin is being sued in his individual and official capacities.

12.     Defendant, Wilfred Martinez ("Martinez"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Martinez was, at all times relevant herein, a police officer, under Shield No. 988 and Tax Reg. No. 924703, assigned to Transit District 1, located at 59th Street/Columbus Circle Subway Station, New York, New York 10019. Defendant Martinez is being sued in his individual and official capacities.

13.     Defendant, Kyle Ting ("Ting"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Ting was, at all times relevant herein, a Police Officer, under Shield No. 3691, Tax Reg. No. 961372, at Transit District 1, located at 59th Street/Columbus Circle Subway Station, New York, New York 10019. Defendant Ting is being sued in his individual and official capacities.

14.     Defendant, Luis Rodriguez ("Rodriguez"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Rodriguez was, at all times relevant herein, a Police Officer, under Shield No. 2107 and Tax Reg. No. 926441, at Transit District 1, located at 59th Street/Columbus Circle Subway Station, New York, New York 10019. Defendant Rodriguez is being sued in his individual and official capacities.

15.     At all times relevant herein, Defendants, John or Jane Doe 1 through 10, were police officers, detectives, supervisors, policy makers and/or officials employed by the NYPD. At this time, Plaintiff does not know the true names and/or tax registration numbers of Defendants John or Jane Doe 1 through 10, as such knowledge is within the exclusive possession of defendants.

16.     At all times relevant herein, Defendants John or Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York, the NYPD. Defendants John or Jane Doe 1 through 10 are being sued in their individual and official capacities.

17.     At all times here mentioned, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

18.     Plaintiff duly served defendant City with a notice of claim, as to all state law claims for relief, which was deemed timely served, *nunc pro tunc.*

19.     Plaintiff has fully complied with the New York General Municipal, regarding all conditions precedent to the commencement of state law claims against the defendant, City of New York.

20.     This action has been commenced within one-year-and-ninety-days from the relevant accrual dates.

## FACTUAL CHARGES

### April 23, 2018 Incident

21.     On April 23, 2018, at approximately 2:15 p.m., Mr. Delgado was in the process of giving others directions in front of a map in the vicinity of the inside of the subway station at 7th Avenue and West 47th Street, County of New York, State of New York.

22.     On said date, time and location, Defendants, including Samsuddin, approached Mr. Delgado without a lawful reason to do so, as he was committing no crime or violation of the law.

23.     Defendants, including Samsuddin, proceeded to violently shove Mr. Delgado against a nearby wall.

24.     Defendants, including, Samsuddin, then applied excessive force by violently contorting his arms and body, so that they could affix metal handcuffs to his wrists placed behind his back.

25.      Defendants, including Samsuddin, then illegally searched Mr. Delgado, which yielded nothing of probative value.

26.     Mr. Delgado inquired, several times, of Defendants, including Samsuddin, the reason for his sudden and gratuitous arrest, with all inquiries being ignored.

27.     Defendant Samsuddin was Mr. Delgado's arresting officer, under arrest No. M18622910.

28.     Defendants, including Samsuddin, falsely arrested Mr. Delgado claiming he committed the crimes of Criminal Possession of a Forged Instrument in the Third Degree and Unauthorized Sale of Certain Transportation Services.

29.     Defendants, including Samsuddin, falsely arrested Mr. Delgado, as they were fully aware that Mr. Delgado did not possess a forged instrument, but knowingly and intentionally chose to state a forged instrument was in his possession to justify and excuse an otherwise invalid arrest.

30.     Mr. Delgado was never in actual, constructive or statutory possession of any forged instrument, including a bent MetroCard, which was purportedly capable of affording its possessor unauthorized access to the New York City Transit system.

31.     Defendant Samsuddin fabricated false evidence to used against plaintiff, namely that he observed plaintiff unlawfully enable another individual to enter the subway platform without permission or authority to do so, without paying the fare the was lawfully owed to the New York City Transit Authority and that he recovered two bent MetroCards from plaintiff's person.

32.     Mr. Delgado had multiple assaults and batteries committed to his person, by defendant Samsuddin, including, but not limited to, being placed in handcuffs too tightly.

33.     Mr. Delgado was then transported to a local precinct by defendant Samsuddin.

34.     Upon arrival at the precinct, Mr. Delgado was illegally fingerprinted and photographed by defendant Samsuddin.

35.     Mr. Delgado was then unlawfully detained within a cell by defendants, including Samsuddin.

36.     Mr. Delgado was eventually taken to Central Booking, where he remained in a cell until his arraignment.

37.     Plaintiff was wrongfully incarcerated over the course of two (2) days or approximately twenty-three (23) hours, until he was released on, or about, April 24, 2018.

38.     Mr. Delgado was released on the condition that he personally appear in court on all subsequent return dates, which constitutes an unlawful restriction upon his liberty and overall freedom of movement.

39.     On April 23, 2018, Mr. Delgado never committed or attempted to commit any crimes or violations of the law, including the possession of a forged instrument or the unauthorized sale of transportation services, which were falsely alleged by defendants, including Samsuddin.

**May 4, 2018 Incident**

40.     On May 4, 2018, at approximately 6:30 p.m., Mr. Delgado was in the process of giving others directions in front of a map in the vicinity of inside of the subway station at 7th Avenue and West 49th Street, County of New York, State of New York.

41.     On said date, time and location, Defendants, including Martinez, Ting and Rodriguez, approached Mr. Delgado without a lawful reason to do so, as he was committing no crime or violation of the law.

42.     Defendants, including Martinez, Ting and Rodriguez, violently and forcefully pushed Mr. Delgado against the wall, demanded that Mr. Delgado that he put his hands behind his back, and handcuffed him in an excessively tight fashion.

43.     Defendants, including Martinez, Ting and Rodriguez, illegally searched Mr. Delgado, with no contraband being recovered.

44.     Mr. Delgado asked Defendants, including Martinez, Ting and Rodriguez, why he was being placed under arrest several times, all of which were ignored.

45.     Defendant Martinez was Mr. Delgado's arresting officer, under arrest No. M18625336.

46.     Defendants, including Martinez, Ting and Rodriguez, falsely arrested Mr. Delgado claiming he committed the crimes of Possession of Burglar's Tools, Criminal Possession of a Forged Instrument in the Third Degree, Theft of Services, Criminal Trespass in the 3rd Degree, Unlawful Sale or Reproduction of a MetroCard and Loitering.

47.     Defendants, including Martinez, Ting and Rodriguez, falsely arrested Mr. Delgado. They were fully aware that no burglar's tools or forged instrument was in Mr. Delgado's possession, but knowingly and intentionally chose to state burglar's tools and forged instrument were in his possession to justify and excuse an otherwise invalid arrest.

48.     Defendant Martinez fabricated false evidence against plaintiff, namely that he recovered a bent MetroCard that could purportedly be used to gain free entrance to the subway platform.

49.     Defendant Ting fabricated false evidence against plaintiff, namely his purported observations of plaintiff received money from several individuals and then proceeded to open the emergency gate to allow them to enter the subway platform, which he then forwarded to prosecutors.

50.     Defendant Rodriguez was the supervising sergeant, who approved of plaintiff's arrest, despite his full knowledge that plaintiff never committed any arrestable offenses.

51.     Defendant Rodriguez also fabricated false evidence against plaintiff, namely that defendant Rodriguez recovered two MetroCard from the vicinity of the emergency gate, which he then forwarded to prosecutors.

52.     Mr. Delgado was never in actual, constructive or statutory possession of any burglar's tools or forged instrument.

53.     Mr. Delgado had multiple assaults and batteries committed to his person, including but not limited to, being placed in handcuffs too tightly by defendant, including Martinez, Ting and Rodriguez.

54.     Mr. Delgado was then transported to a local precinct.

55.     Upon arrival at the precinct, Mr. Delgado was illegally fingerprinted and photographed.

56.     Mr. Delgado was then placed in a cell for many hours.

57.     Mr. Delgado was eventually taken to Central Booking, where he remained in a cell until his arraignment.

58.     Plaintiff was wrongfully incarcerated for approximately two (2) days or approximately seventeen (17) hours, until he was released on or about May 5, 2018.

59.     Mr. Delgado was released on the condition that he personally appear in court on all subsequent return dates, which constitutes restrictions on his liberty and freedom of movement.

60.     Mr. Delgado never committed any crimes or violations of the law.


**September 22, 2018 Incident**

61.     On September 22, 2018, at approximately 6:15 p.m., Mr. Delgado was in the process of giving others directions in front of a map in the vicinity of the inside of the subway station at 7th Avenue and West 49th Street, County of New York, State of New York.

62.     On said date, time and location, Defendants, including Martinez, Ting and Rodriguez, approached Mr. Delgado without a lawful reason to do so, as he was committing no crime or violation of the law.

63.     Defendants, including Martinez, Ting and Rodriguez, each proceeded to push Mr. Delgado against a nearby wall, violently demanding that Mr. Delgado put his hands behind his back, so that defendants could handcuff him.

64.     Defendants, including Martinez, Ting and Rodriguez, then illegally searched Mr. Delgado, with said search yielding nothing of probative value.

65.     Mr. Delgado asked Defendants, including Samsuddin, Martinez, Ting and Rodriguez, why he was being placed under arrest several times, all of which were ignored.

66.     Defendant Martinez was Mr. Delgado's arresting officer under arrest No. M18649561.

67.     Defendants, including Martinez, Ting and Rodriguez, falsely arrested Mr. Delgado, claiming he committed the crimes of Criminal Tampering in the Second Degree, Unlawful Sale or Reproduction of a MetroCard, Loitering and Unlawful Solicitation in the Subway, which they knew to be untrue.

68.     Defendants, including Martinez, Ting and Rodriguez, were fully aware that Mr. Delgado did not commit the abovementioned crimes, but knowingly and intentionally chose to state otherwise to justify and excuse an otherwise invalid arrest.

69.     Defendant Ting fabricated false evidence to be used against Mr. Delgado, namely that Mr. Delgado placed a piece of tape along the magnetic strip of the emergency gate to the subway platform, so that the gate would be prevented from fully closing, that defendant Ting observed plaintiff approached various individuals, stating to each, in sum and substance, that plaintiff would said individuals through the gate in consideration for compensation in the amount of Five USD ($5.00) and that defendant Ting observed further observed plaintiff accept Five USD ($5.00) from five (5) individuals, before plaintiff proceeded to open the aforementioned gate, permitting said five (5) individuals pass through without permission and authority or paying the fare lawfully owed to the New York City Transit Authority.

70.     Defendant Martinez was fully aware that defendant Ting's purported observations, regarding Mr. Delgado's alleged unlawful activity, were complete fabrications, yet defendant Martinez proceeded to forward said false information to prosecutors.

71.     Defendant Rodriguez was the supervising sergeant, who approved and authorized Mr. Delgado's arrest, despite his full knowledge that plaintiff had committed no crime or violation of the law and did not attempt to commit any crime or violation of the law, including those referenced above.

72.     Mr. Delgado had multiple assaults and batteries committed to his person, including but not limited to, being placed in handcuffs too tightly by defendants, including Martinez, Ting and Rodriguez.

73.     Mr. Delgado was then transported to a local precinct by defendants, including Martinez, Ting and Rodriguez.

74.     Upon arrival at the precinct, Mr. Delgado was illegally fingerprinted and photographed by defendants, including Martinez, Ting and Rodriguez.

75.     Mr. Delgado was then confined to a jail cell by defendants, including Martinez, Ting and Rodriguez.

76.     Mr. Delgado was eventually taken to Central Booking, where he remained in a cell until his criminal court arraignment.

77.     Plaintiff was wrongfully incarcerated over the course of two (2) days or approximately nineteen (19) hours, until he was released on, or about, September 23, 2018.

78.     Mr. Delgado was compelled to return to court numerous times to contest the false charges levied against him, until all criminal charges re to all three (3) arrests were dismissed on August 27, 2019.

79.     Mr. Delgado never committed any crimes or violations of the law.

80.     At no point did Defendants, including Martinez, Ting and Rodriguez, ever observe Mr. Delgado commit any crime or offense.

81.     At no point were the defendants, including Martinez, Ting and Rodriguez, ever told by any witnesses that Mr. Delgado committed any crime or violation of the law.

82.     In each of three incidents referenced, *supra*, Defendants, including Samsuddin, Martinez, Ting and Rodriguez, each lacked the requisite probable cause or reasonable suspicion to stop,

question, search, arrest, and subsequently cause criminal prosecutions to be initiated against Mr.

Delgado, respective to the events and occurrences set forth for each distinct date of incident.

83.     In all of the three incidents, Defendants, including Samsuddin, Martinez, Ting and

Rodriguez, each lacked probable or reasonable cause to believe the respective prosecutions

would succeed against Plaintiff, or that Plaintiff was guilty of any crime or unlawful offense.

84.     In each of three incidents, Defendants, including Samsuddin, Martinez, Ting and

Rodriguez, acting with malice, conveyed the aforementioned false, fabricated, misleading or

incomplete information to prosecutors, so that Plaintiff would be prosecuted for Criminal

Possession of a Forged Instrument in the Third Degree and other related charges.

85.     In each of the three incidents, Defendants were without a judicially authorized warrant

for plaintiff's arrest.

86.     Defendants, including Samsuddin, Martinez, Ting and Rodriguez, intentionally,

knowingly and falsely made said allegations to conceal their otherwise illegal, tortious and

sinister acts, namely stopping and searching an individual illegally without a search or arrest

warrant, probable cause or reasonable suspicion, and then effectuating an arrest predicated on

fabricated observations, therefore also without probable or reasonable cause.

87.     In all three above referenced incidents, Defendants, including Samsuddin, Martinez, Ting

and Rodriguez, suppressed evidence, namely the existence of video surveillance and civilian eye-

witnesses that would have served to fully exculpate and exonerate plaintiff of all criminal

charges for each incident.

88.     Defendants have displayed a pattern and practice of fabricating false observations and

falsely alleging contraband to be found to justify otherwise unwarranted arrests.

89.     During all of the events described, the Defendants, including Samsuddin, Martinez, Ting and Rodriguez, acted maliciously and with intent to injure Plaintiff, as they possessed no valid reason or justification for stopping, searching and arresting plaintiff.

90.     At all times relevant hereto, Defendants, including Samsuddin, Martinez, Ting and Rodriguez, were involved in the decision to arrest Plaintiff without probable cause or failed to intervene when they observed others arresting Plaintiff without probable cause.

91.     At all times relevant hereto, Defendants, including Samsuddin, Martinez, Ting and Rodriguez, engaged in fraud, perjury, the suppression of evidence and other actions conducted in bad faith, or failed to intervene when defendants observed others doing so, all in furtherance of Plaintiff's criminal prosecutions.

92.     Defendant City has engaged in a policy, custom, or pattern and practice of stopping, questioning, frisking, searching and arresting individuals without reasonable suspicion or probable cause.

93.     Defendant City and its employee police officers have also engaged in a policy, custom, or pervasive pattern and practice of failing to draft the required documents after conducting stops and searches individuals, colloquially known as "stop and frisk" reports, despite being court ordered to do so.

94.     Mr. Delgado asserts that the aforementioned unlawful acts committed by defendants are representative of a pervasive policy, custom or pattern and practice within the City of New York and the NYPD.

95.     Mr. Delgado asserts that Defendants, including Samsuddin, Martinez, Ting and Rodriguez, illegally stopped him, searched his person, and then falsely arrested him, due solely

to their racial, ethnic, gender, or socio-economic discriminatory prejudices, their desire to meet an arrest quota and to benefit from increased overtime compensation.

96.      Mr. Delgado further asserts that Defendants, including Samsuddin, Martinez, Ting and Rodriguez, acted in such an unlawfully reprehensible manner, on each of the above referenced incident dates, due to their assumption that defendants' version of events would undoubtedly and unduly be credited over Mr. Delgado's, solely because Mr. Delgado is a Hispanic or African American male.

97.      On each of the respective incident dates, Defendants, including Samsuddin, Martinez, Ting and Rodriguez, arrested and prosecuted Plaintiff, not because of any probable cause to belief that Plaintiff had committed any crimes or violations of the law, but because Plaintiff is a Hispanic or African American male.

98.      Defendants, including Samsuddin, Martinez, Ting and Rodriguez, discriminated against Plaintiff by arresting, assaulting, battering, and prosecuting Plaintiff, solely due to defendants' perception or consideration of Plaintiff's race, ethnicity, national origin, immigration status, religion, gender, socio-economic status or age.

99.      Defendants, including Samsuddin, Martinez, Ting and Rodriguez, perpetrated multiple overt acts in furtherance of their obviously discriminatory inclinations, namely the unlawful car stop, searches, assaults, batteries, seizure, arrest, and prosecution against plaintiff.

100.     Defendants, including Samsuddin, Martinez, Ting and Rodriguez, possessed no valid reason to stop plaintiff, to search plaintiff, or to arrest plaintiff, on any of above referenced incident dates, which gives rise to the strong inference that the unlawful acts committed by Defendants, including Samsuddin, Martinez, Ting and Rodriguez, against Plaintiff were discriminatorily motivated and enacted upon.

101.    Defendants, including Samsuddin, Martinez, Ting and Rodriguez, subjected plaintiff to disparate treatment compared to other individuals similarly situated, because defendants did not stop any white individuals, who were acting in the same manner, as plaintiff during each of the instances referenced herein, *supra*.

102.    Plaintiff asserts that the defendants, including Samsuddin, Martinez, Ting, Rodriguez, and John or Jane Does 1-10, who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact their police officers.

103.    The individually named defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

104.    *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Attached hereto, as Exhibit A, and incorporated by reference herein, are

various articles and reports detailing the magnitude and overwhelming prevalence of incidents, in which NYPD officers were caught lying, including instances that resulted in the arrest and imprisonment of innocent people. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via some incontrovertible form of evidence.

105.    On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

106.    On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana.

It should not require an article in *The New York Times* to call attention to such patently

disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's

failure to correct such behavior, the willingness of prosecutors and judges to credit the lying

officers and the increasing rate of occurrence.

107.    On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies

Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD

Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at

least three innocent people. The article described how Det. Franco lied about observing drug

transactions on at least three separate occasions, lies that were only uncovered through

contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being

sentenced to prison terms in excess of one-year.

108.    Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph

Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking

Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He

Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The

New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police

Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In

Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York

Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh,

*The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police,"

by Jim Dwyer, *The New York Times*, October 13, 2011.

109.    The NYPD has a longstanding and ignominious record of failing to discipline its officers,

or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York

*Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

110.    Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in plaintiff's arrest without probable cause.

111.    Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

112.    Defendants' actions, pursuant to plaintiff's underlying arrests, which each occurred without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

113.    Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of defendants, the NYPD and City of New York.

114.    Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was extremely high.

115.    Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including Samsuddin, Martinez, Ting and Rodriguez.

116.    The aforementioned acts of defendants, including the City, Samsuddin, Martinez, Ting Rodriguez and John or Jane Does 1-10, directly or proximately resulted in the deprivation or violation of Mr. Delgado's civil rights, as guaranteed and protected by the Fourth, Sixth and

Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of New York.

117.    As direct or proximate results of the above referenced acts, Mr. Delgado was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, in the form of fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience and anxiety.

### FIRST CAUSE OF ACTION
Unlawful Search and Seizure Under
New York State Law

118.    The above paragraphs are here incorporated by reference as though fully set forth.

119.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

120.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

121.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

122.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

123.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 12, of the New York State Constitution.

124.    Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

125.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

126.    The above paragraphs are here incorporated by reference as though fully set forth.

127.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

128.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

129.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

130.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

131.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 12, of the New York State Constitution.

132.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
False Arrest and False Imprisonment Under
New York State Law

133.    The above paragraphs are here incorporated by reference as though fully set forth.

134.    Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

135.   Plaintiff was conscious of his confinement.

136.   Plaintiff did not consent to his confinement.

137.   Plaintiff's arrests and false imprisonment were not otherwise privileged.

138.   Defendant City, as employer of the individual Defendants, is responsible for their

wrongdoing under the doctrine of *respondeat superior*.

139.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## **FOURTH CAUSE OF ACTION**
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

140.   The above paragraphs are here incorporated by reference as though fully set forth.

141.   The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution

by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

142.   The wrongful, unjustifiable, and unlawful apprehensions, arrests, detention, and

imprisonments of Plaintiff were each carried out without a valid warrant, without Plaintiff's

consent, and without probable cause or reasonable suspicion.

143.   At all relevant times, Defendants acted forcibly in apprehending, arresting, and

imprisoning Plaintiff.

144.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## **FIFTH CAUSE OF ACTION**
Assault and Battery Under
New York State Law

145.   The above paragraphs are here incorporated by reference as though fully set forth.

146.    Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

147.    Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

148.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

149.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

150.    The above paragraphs are here incorporated by reference as though fully set forth.

151.    The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

152.    Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

153.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

### SEVENTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

154.    The above paragraphs are here incorporated by reference as though fully set forth.

155.    Defendants arrested, detained and caused criminal prosecutions to be initiated against Plaintiff to compel the compliance or forbearance of some act.

156.    Defendants had no excuse or justification to forcibly detain or initiate prosecutions against Plaintiff, especially with the absence of any cognizable probable cause.

157.    Defendants intended to inflict substantial harm upon Plaintiff.

158.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecutions.

159.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

160.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

161.    The above paragraphs are here incorporated by reference as though fully set forth.

162.    Defendants arrested, detained and caused criminal prosecutions to be initiated against Plaintiff to compel the compliance or forbearance of some act.

163.    Defendants had no excuse or justification to forcibly detain and initiate prosecutions against Plaintiff, especially with the absence of any cognizable probable cause.

164.    Defendants intended to inflict substantial harm upon Plaintiff.

165.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecutions.

166.    Defendants' actions deprived Plaintiff of his right to free from illegal searches and seizures, as well as his right not to be deprived of his liberty without the due process of law.

167.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Intentional and Negligent Infliction of Emotional Distress
New York State Law

168.    The above paragraphs are here incorporated by reference as though fully set forth.

169.    The conduct of Defendants was extreme and outrageous.

170.    Defendants' extreme and outrageous conduct was perpetrated with the intent to cause, or with the knowing disregard for the substantial probability of causing, severe emotional distress to Plaintiff.

171.    To the extent that defendants did not intend to cause plaintiff to suffer sever emotional distress or recklessly disregard the substantial probability that severe emotional distress would result from their extreme and outrageous conduct, defendants should have known that such behavior would result in the causation of severe emotional distress.

172.    Defendants' extreme and outrageous conduct is causally related to Plaintiff's injuries.

173.    Defendants' extreme and outrageous conduct caused Plaintiff to sustain extreme emotional distress.

174.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

175.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
New York State Law

176.    The above paragraphs are here incorporated by reference, as though fully set forth herein.

177.     Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to the New York County District Attorney's Office.

178.     Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

179.     Accordingly, defendants violated Plaintiff's right to fair trial, pursuant to the Sixth and Fourteenth Amendments to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

180.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

181.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

182.     The above paragraphs are here incorporated by reference as though fully set forth.

183.     Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to the New York County District Attorney's Office.

184.     Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

185.     Accordingly, defendants violated Plaintiff's right to fair trial, pursuant to the Sixth and Fourteenth Amendments to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

186.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWELFTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
New York State law

187.     The above paragraphs are here incorporated by reference, as though fully set forth herein.

188.     Plaintiff, as a Hispanic or African American male and member of a racial minority and protected class.

189.     Defendants discriminated against Plaintiff on the basis of his race, national origin, ethnicity, religion or sex.

190.     Defendants also engaged in the selective treatment of Plaintiff compared to others similarly situated.

191.     Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, religion, intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

192.     Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

193.     Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

194.     Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

195.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

196.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## THIRTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 and 1983 Against Individual Defendants

197.    The above paragraphs are here incorporated by reference, as though fully set forth herein.

198.    Plaintiff, as a Hispanic or African American male, is a member of a racial minority and protected class.

199.    Defendants discriminated against Plaintiff on the basis of his race, national origin, ethnicity, religion or sex.

200.    Defendants also selectively treated Plaintiff in comparison to others similarly situated.

201.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as race, religion, intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

202.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

203.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

204.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

205.    Accordingly, defendants violated plaintiff's right to be afforded the equal protection of the laws, under the Fourteenth Amendment to the United States Constitution.

206.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 and 1986 Against Individual Defendants

207.    The above paragraphs are here incorporated by reference, as though fully set forth.

208.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of the equal protection of the laws, or of the privileges and immunities under the laws.

209.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

210.    Plaintiff sustained injuries to his person or was deprived of rights or privileges of citizens of the United States.

211.    Defendants' conspiracy was motivated by some racial, or otherwise class-based, invidious discriminatory animus.

212.    The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or being committed, possessed the power to prevent or aid, and neglected to do so.

213.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
### Failure to Intervene Under
### New York State Law

214.    The above paragraphs are here incorporated by reference as though fully set forth.

215.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

216.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

217.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTEENTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

218.   The above paragraphs are here incorporated by reference as though fully set forth.

219.   Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

220.   Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

221.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTEENTH CAUSE OF ACTION
Negligent Hiring, Retention and Supervision Under
New York State Law

222.   The above paragraphs are here incorporated by reference as though fully set forth.

223.   Defendant City possessed a duty to ensure that its employees did not violate the civil rights of individuals, such as plaintiff.

224.   Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

225.   Defendant City breached those duties of care.

226.   Defendant City placed defendants in a position, where they could inflict foreseeable harm.

227.   Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

228.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

229.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### EIGHTEENTH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42  U.S.C. § 1983 Against Defendant City

230.    The above paragraphs are here incorporated by reference as though fully set forth.

231.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

232.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

233.    Defendant City, its policymakers and supervisors failed to provide adequate training or supervision to their subordinates, to such an extent that is tantamount to the City's deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

234.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

235.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

236.    Defendant City's conduct caused the violation of plaintiff's civil rights enumerated within the United States Constitution, pursuant to the Fourth, Sixth and Fourteenth Amendments thereto.

237.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)    Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

**e)**    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 21, 2019

Respectfully submitted,

/s/ Samuel C. DePaola_____
Samuel C. DePaola, Esq.

Bar Number: SD0622
Sim & DePaola, LLP
*Attorneys for Mr. Delgado*
4240 Bell Blvd - Suite 201
Bayside, New York 11361
T: (718) 281-0400
F: (718) 631-2700
sdepaola@simdepaola.com